Brinkerhoff, J.
The instrument executed by Almon Euggles to the Ohio Eailroad Company, was more than a mere license revocable at will. It wanted but a more formal execution, to render it a legal conveyance of a perpetual easement in such lands as the grantee might appropriate in conformity to its terms. The Ohio Eailroad Company having accepted the grant and complied with the conditions on which it was made, would, by virtue of this instrument, at least be entitled to enforce such legal conveyance; and regarding as done that which ought to he *done, we treat the instrument, for the purposes of this suit, as if it were a formally executed legal conveyance. Wilson v. Chalfant, 15 Ohio, 248. The instrument itself containing no limitation as to time, the duration of the easement granted would be perpetual, unless terminated by a release or abandonment.
The remaining, and, indeed, the decisive question in this case, here presents itself. Was the easement of the Ohio Eailroad Company, thus acquired, of such a nature as to be capable of being pledged in security of a loan, and, on failure to redeem the pledge, of being sold and transferred so as to vest the easement in the purchaser ? or, in other words, was it capable of sale and transfer ?
And here, at the outset of this inquiry, it is important to notice that this easement in the Ohio company originated solely in voluntary contract between it and Almon Euggles. It was not appropriated to the use of the company in the exercise by it of any right of *6 eminent domain delegated by the state to the company, nor has there been, at any time since, any exercise of, or claim to have exercised, such sovereign right, as against the land in question, either by the Ohio company or those who have succeeded, or claim to have succeeded, to its rights. It was purely a matter of contract between Ruggles and the company. Nor are we perplexed in this case by being called on to decide any difficut and important question as to the assignability or otherwise of corporate rights, privileges, enfranchises. The state is no party to this proceeding, her interests or rights are in no way involved in it, nor has her authority ever been invoked or exercised in respect to the subject-matter of this easement, except to enforce the contract of pledge between herself and the Ohio Railroad Company. The possession of corporate franchises, or of a corporate existence, even, was not at all necessary to the validity of the contract between the company and Ruggles, nor, as against Ruggles, to the complete enjoyment of the easement by the company. Had the persons composing the Ohio Railroad Company been nothing more than an unincorporated partnership, it would have been fully competent to make the contract withRuggles which it did make, to have vested in it the easement *which he conveyed; and, as against Raggles, fully to enjoy that easement; that is to say, it would have been competent to construct a railroad over the land covered by the easement, and to rum trains of cars over it, at will, from end to end. All this the company could do without corporate franchises or corporate existence; and the right to do this, and no more, is all that is now claimed, as-against Ruggles, by those who claim to have succeeded to the rights-of the Ohio Railroad Company in respect to the easement granted by him. We are, therefore, freed from all questions of eminent domain and corporate franchise, and, in the determination of the case,. we throw them entirely out of view, and confine ourselves exclusively to an inquiry as to the rights of the original parties and their successors, arising out of the contract between them.
We return, then, to the question: Was this easement capable of transfer? The question seems to be one of first impression. At all events, no case is cited, and we can find none, in which the point has ben adjudicated. The subject-matter of the question — a right of way for a railroad — is itself new ; and the principles, long ago established, in regard to rights of way personal or in gross, and rights of way appurtenant -to real estate, have no direct application *7 to this new class of rights of way. It, we apprehend, is sui generis, and must be governed by reasons peculiar to itself, and the lights-which may be derived from the analogies it may bear to the old classes of easements of this kind, whose incidents have been already fixed and determined. It seems to be settled that “ if a right of way be in gross, or a mere personal right, it can not be assigned to-any other person, nor transmitted by descent. It dies with the person, and it is so exclusively personal, that the owner of the right can not take another person in company with him. But when a. right of way is appendant of annexed to an estate, it may pass by assignment when the land is sold to which it was appurtenant.” 3 Kent, 420. Why this distinction ? Because (I apprehend) the grant being silent on the subject of a transfer of the easement, the grant simply of a personal right does not in its nature presuppose or imply a right of transfer, or give rise to any presumption that *such a right must have entered into the intention of the parties. But where the easement is annexed to real estate, the simple grant of such an easement fairly and reasonably justifies a presumption, in the absence of -anything in the terms of the grant to the contrary, that the duration of the easement was intended to run parellel with the estate to which it was made appurtenant, and to be subject to its incidents and liabilities. This easement was made appurtenant to a railroad, and was granted to a corporation whose sole function was the construction, ownership, and management of a railroad. Now a railroad, strictly speaking, is neither a person nor real estate; yet it presents strong features of analogy to real estate —particularly in those qualities out of which arises the distinction above referred to. Like real estate, a railroad is — or at least the Ohio Railroad was — expected to be of perpetual duration. 33 Ohio L. L. 320, sec 3. Although the body corporate, which is nothing but a fiction of law, instituted for purposes of policy and convenience, remains the same, yet its actual ownership, like that of real estate, is subject to constant change by all the modes of transfer known to the law. A right of way appendant to a farm, is granted or reserved as being necessary or convenient for the occupancy and use of the farm, and is therefore transferable with the farm. A railroad is an entire thing ; and the entire right of way for a railroad is made up out of a union of many rights derived from many individual owners; some by contracts, involving various duties and obligations, and others by appropriation, under a delegated *8 right of eminent domain. Any one of them is appurtenant to all the remainder — necessary to the enjoyment of all the remainder— and therefore, from analogy to rights of way appendant to real estate, alienable, we think, with the thing to which it is appurtenant.
If, then, the easement in question be, in its nature, capable of alienation, the means or medium of transfer, whether voluntary or enforced, or the party to whom the sale is made, whether a natural" person or a body corporate, can not affect the question. They can in no way affect the interests, and therefore in no way the rights, of the original grantor, or those claiming under him. *As to him and them, the saléis valid and binding, provided the purchaser had legal capacity to make the contract of purchase, and no condition, either expressed or fairly implied, on which the grant wasmade, has been thereby defeated or violated.
The legal capacity of E. Lane, the intermediate purchaser, and of the Junction Railroad Company, the present claimant of the casement, to purchase a right of way from any person authorized to sell, will not be questioned.
Has any condition of the grant, expressed or implied, been violated ?
The only express condition named in the grant is, that the grantee should locate its road across the land of the grantor. This was done by the original grantee. The grant was, however, we-think, subject to the further conditions, fairly implied from the nature of the grant, that a railroad should be constructed and operated on the same line substantially as that contemplated by the charter of the original grantee. This, too, seems to have been done.
On the sale of the Ohio Railroad by the state, Lane, under whom the complainant claims title to this easement, purchased but a section of the road; and it is a least an open question whether, by virtue of that sale, any of the corporate franchises of the Ohio Railroad Company passed and were vested, either in him alone or in conjunction with the purchasers of the other sections of the road. Now, assuming that Lane owned but a portion of the road, and was vested with none of its corporate franchises, and that, therefore, he had not the power to complete and to operate the road, in conformity with the implied conditions of the grant, it may be argued, and in the consideration of this case it has been suggested, that this want of power in Lane himself to fulfill the conditions of *9 -the grant, would work a forfeiture or avoidance of the easement. But, we are satisfied, there is nothing in this argument.
Suppose, that in contemplation of the construction of this road, but before any corporate body whatever had been chartered for that purpose, Lane, in his individual capacity, had volunteered to pass along the line of the contemplated road, and had purchased *from individual land owners, paid for, and received from them grants of the right of way for just such a railroad as that authorized by the charter of the Ohio Railroad Company, on the conditions that such road should'be located and constructed over the lands of the grantor. Suppose, that immediately after the right of way was thus acquired, a company were incorporated to construct just such a road; that Lane should transfer the rights of way held by him to the corporation, and that a railroad should thereupon be constructed, in all respects, like that provided for in tho ■conditions of the grants of rights of way, could it be contended, with any degree of plausibility, that these grants would be void, merely because, at the time they were made, Lane had not, in his own person, then and there the power to fulfill their future conditions? We think not. So that the conditions of the grant are actually fulfilled, surely the agency through which their fulfillment .is accomplished can not affect the validity of the grant itself. For there is nothing of which the grantor can complain; he is wholly uninjured.
Again, the charter of the Ohio Railroad Company provided that its road should be completed within ten years. No railroad on the line designated in that charter, was completed within that limit; ■but that of the Junction company and its extensions were completed within the time to which that limit was extended by subsequent legislation; and it is contended that one of the implied conditions of the grant of the right of way in question was, that the road should be completed within the time fixed by law, at the date of tho grant.
We do not think so. The time limited for the completion of the road was fixed as a condition in the charter of the company, by the state, for her benefit and security. This benefit and security she hail a right to waive at her own will; and it seems to us that when Almon Ruggles granted a right of way to the Ohio Railroad Company, without any stipulation as to the time in which its conditions should be performed, he must be held to have made the grant sub *10 jeet to, and in contemplation of, the right of the state to extend the time for the completion of the road. Doubtless, a right of way, like any other right of property, maybe ^abandoned; and' such abandonment, which depends on the intention of the owner, may be inferred from the lapse of time or other circumstances indicative of an intention on the part of the grantee to abandon ; but in this case we see no sufficient evidence of such intention.
The Ohio Railroad Company was chartered by the state, for the purpose of constructing a railroad, running east and west, along the south shore of lake Erie. To attain this object, and to have the road located across his land, Almon Ruggles granted the right of way in question. The company made a loan from the state, and pledged its road, with its appurtenances, in security. The company having failed in its contract with the state, the road was sold by the state, and in conformity to the terms of the pledge, to E. Lane, who sold the same to the Junction company, which was by law authorized to make the purchase. The Junction company has stepped into the place of the Ohio company, and has constructed its road, so far as the land of Ruggles is concerned, on the precise1 line where the Ohio company had located its road, and on substantially the same line throughout, so as to afford the same facilities of transportation and travel.
On this state of fact we are. unable to see how or wherein the estate of Ruggles has been injured by the transfer, or that anything has happened or been done since the grant, which, had it been foreseen by him at the time of the grant, could reasonably have induced him to withhold it. And the attempt of his devisee, therefore, now to exact further compensation, is, we think, wrongful; and to prevent this, the powers of a court of equity are properly invoked.

Decree for complainant.

Barteet, C. J., and Swan, Bowen, and Scott, JJ., concurred.

 Judge Bowen’s term of office expired on the 9th day of February, 1858, when he was succeeded by Judge Sutliff.